**In re the Marriage of R.E.G.[1] Appellant (Petitioner Below),**

v.

**L.M.G. Appellee (Respondent Below).**

**No. 32A01–9101–CV–9.**

Court of Appeals of Indiana,
First District.

May 14, 1991.

---

**1.** Ordinarily, we do not use initials to protect the privacy of litigants in divorce cases. However, the present case involves sensitive matters, and therefore—pursuant to R.E.G.'s request—we will employ initials in place of the parties' names.

James P. Seidensticker, Jr., George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for appellant.

Michael T. Isbell, Evan Wolfson, Lambda Legal Defense and Educational Fund, Inc., New York City, Michael Aldana, K. Steven Blake, Indiana Civil Liberties Union, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, Katherine Franke, National Lawyers Guild, New York City, for amici curiae.

Bruce N. Pennamped, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

ROBERTSON, Judge.

R.E.G. [Husband] appeals the property distribution portion of the decree dissolving his marriage to L.M.G. [Wife]. Husband also appeals the trial court's award of attorney's fees in favor of the wife's attorney. The trial court awarded the wife 60% of the marital estate finding that the husband's homosexual relationships may have placed the wife at risk for developing Acquired Immune Deficiency Syndrome [AIDS]. The trial court ordered the husband to pay nearly all of the wife's attorney's fees—at least in part—because the husband's sexual preference contributed to the failure of the marriage. We reverse and remand with instructions that the trial court 1) effect an equal distribution of the marital estate and 2) enter an order regarding attorney's fees without consideration of the issues related to the failure of the marriage.

## FACTS

The parties were married on April 23, 1960. The marriage survived nearly 30 years; the petition for dissolution was filed January 19, 1990. Three children were born of the marriage, all of whom were emancipated at the time of these proceedings except the youngest daughter who was in the process of completing her senior year at an academically renowned university. No issue concerning the support of the children is germane to this appeal.

The husband worked continuously throughout the marriage. The wife also worked continuously throughout the marriage except for brief hiatuses related to child bearing. The husband was the primary breadwinner achieving the level of senior vice-president at a large department store earning $85,000.00 per year. However, the husband lost this job on July 31, 1987 as a result of a corporate takeover and through no fault of his own. Since then he has remained underemployed. In 1989, the husband earned almost $12,000.00 and the wife earned approximately $41,-000.00.

The net marital estate was worth nearly $500,000.00. The husband's pension and his IRA—acquired by the joint efforts of both parties but directly through the husband's employment—were worth nearly $300,000.00. The trial court awarded the wife approximately 60% of the marital estate.

Additional facts are supplied as necessary.

## DECISION

### I.

#### Property Distribution

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *Van Riper v. Keim* (1982), Ind. App., 437 N.E.2d 130. We consider only that evidence most favorable to the trial court's disposition of the property. *Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, *trans. denied.* We presume the trial court followed the law and made all the proper considerations in making its decision. *White v. White* (1981), Ind.App., 425 N.E.2d 726. We will reverse only if there is no rational basis for the award; that is, if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176.

Indiana Code 31-1-11.5-11(c), governing property distributions in contested divorces, reads as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties.

Following the legislative adoption of the equal division presumption, we placed the requirement upon trial courts—when effecting an unequal division of marital property—to state its reasons based on the evidence establishing that an equal division is not just and reasonable. *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641. However, express trial court findings will not be compelled for insubstantial deviations from precise mathematical equality. *Kirkman v. Kirkman* (1990), Ind.App., 555 N.E.2d 1293.

We note at the outset that this case does not involve an insubstantial deviation from an equal division of marital property. The deviation from equality in the present case amounts to approximately $50,000.00.

We must also note at the outset that the trial court has expressly based its decision—at least in part—upon fault. Simply stated, we will not tolerate the injection of fault into modern dissolution proceedings. The Indiana Dissolution of Marriage Act which was adopted in 1971 expressly abolished the previously existing grounds for divorce which required a finding of fault on the part of one of the spouses. IND.CODE 31–1–11.5–1 *et seq.; Flora v. Flora* (1976), 166 Ind.App. 620, 337 N.E.2d 846. Frankly, we are quite surprised that after twenty (20) years' experience under the "new" Act, we are required to state that the conduct of the parties during the marriage—except as it relates to the disposition or dissipation of property—is irrelevant to the trial court's division of marital assets. I.C. 31–1–11.5–11(c). Our task in the present case, as we perceive it, is to determine—after removing fault from the analysis—whether the trial court's finding that the statutory presumption that an equal distribution of marital property is just and reasonable has been rebutted can be sustained.

### A.

Whether the trial court's finding—that the risk the wife might develop AIDS impacted her economic circumstances—supports the unequal division of marital assets?

The trial court entered the following finding to justify the unequal split:

The court finds that the evidence of the impact of the HIV AIDS virus on Wife is relevant to her economic circumstances and earning abilities in that Husband's relationships contributed to the breakup of a long-standing marriage thereby impairing not only Wife's secure economic circumstances at the time of separation, but also her prospects for a secure future upon remarriage. Husband's actions may have negligently increased the risk of transmission of the disease to Wife. Husband's actions may result in the depletion of marital assets by increasing health care costs and decreasing Wife's ability to pursue economically productive activity should she become infected. Wife requires blood tests after the dissolution which will result in additional medical expense to her. See generally: *In Re: Robinson v. Robinson* (1982), 187 Conn. 70, 72, 444 A.2d 234,

... a spouse whose conduct has contributed materially to the breakdown of a marriage should not expect to receive a financial kudos for his or her misconduct.

(Connecticut like Indiana recognizes "irretrievable breakdown" as a grounds for divorce); *O'Brien v. O'Brien* (1985), 66 N.Y.2d 576 [498 N.Y.S.2d 743, 489 N.E.2d 712] which, in addition to holding that a medical license constituted property, held that:

... except in egregious cases which shock the conscience of the Court, however (fault) ... is not a just and proper factor for consideration of equitable distribution of marital property.

Clearly the facts before this Court make this an egregious case.

In the present case, nearly all of the medical evidence regarding the transmission of HIV and the risk of developing AIDS was supplied by the wife's testimony. Wife, a nurse, testified that she was familiar with the virus, HIV, which causes AIDS. She testified that the virus was most commonly transmitted through body fluids and sexual contact. She testified further that husband's disclosure to her of his sexual preference caused her definite concern in terms of her health because the husband had been "sexually active in the gay community" as well as with her. She testified that she had received a blood test designed to detect the presence of HIV which was negative. She testified she was nevertheless afraid of developing AIDS because the blood test was not conclusive and the virus "could show at anytime." She testified further that the manifestations of HIV can be shown within six months or two years or as late as ten years and that the consequences of HIV and AIDS are death.

The evidence was undisputed that the last sexual contact between the husband and wife took place sometime in 1987. The wife took a blood test and tested negatively for HIV in March of 1990—more than two years after the last time she had sex with the husband.

The husband testified that he had never engaged in any physical contact that would expose him to AIDS before breaking off sexual relations with the wife. The husband testified further that he had been tested for HIV on several occasions and had always tested negative.

From an examination of the trial court's finding as set out above, we can easily discern that the trial court decided to divide the marital property in the wife's favor—at least in part—expressly on the basis of fault. The trial court found that the husband's relationships contributed to the breakup of the long-standing marriage to the detriment of the wife's economic circumstances—without consideration of the HIV/health issue. The trial court found further that "[h]usband's actions may have negligently increased the risk of transmission of the disease to Wife." The trial court noted that while fault is usually not a just and proper factor for consideration in the distribution of property upon divorce, fault could be considered "in egregious cases which shock the conscience of the Court." [2] Finally, the trial court concluded that "[c]learly the facts before this Court make this an egregious case."

The balance of the trial court's justification for the division of marital property in favor of the wife was based on the rationale that the wife's fear that she was at risk for AIDS impacted her future economic circumstances. As discussed below, we hold that this justification is implicitly based upon fault.

The wife's case rests upon technical medical evidence regarding the transmission of HIV, the accuracy of HIV testing, and the contraction of AIDS. Husband asserts in his brief that he was surprised by the injection of this issue into the case and was unprepared to rebut the wife's "medical evidence." He and the amici curiae assert that the medical facts regarding the methods of communication of AIDS are no longer subject to reasonable dispute and indicate that the wife is quite ignorant and misinformed regarding the risk that she might develop AIDS. Husband and the amici curiae have supported these contentions with a wealth of medical information contained in United States government publications including a Surgeon General's report. They urge us to take judicial notice of these materials which indicate that HIV is 99% detectable within three months' time and a false negative test for HIV is remote. Husband as-

---

**2.** While this may represent the law in one of our sister states, we refuse to endorse or sanction any injection of fault into Indiana dissolution proceedings.

serts that since both he and his wife tested negative for HIV more than two years after ending sexual relations, there can be no appreciable risk that the wife will develop AIDS contracted from contact with him.

The wife, not surprisingly, asserts that we may not take judicial notice of the medical evidence contained in the government publications submitted by the amici curiae and the husband. We note, however, that there is absolutely no evidence in the record indicating that homosexual men are at greater risk for contracting AIDS than other segments of our population. We assume, nevertheless, that the wife's argument has been premised on this "fact" and that she would have us take judicial notice of this "fact."

In *Stewart v. Stewart* (1988), Ind.App., 521 N.E.2d 956, *trans. denied*, we refused to take judicial notice of medical literature regarding the methods of communication of AIDS because—at that time—the methods of communication were "not so firmly established as to be beyond reasonable dispute." 521 N.E.2d at 960. We are tempted to retreat from this position because—as the amici curiae urges—one of the potential evils of the trial court's decision is to undermine sound public health policies necessary in the fight against AIDS by propagating misinformation about AIDS, encouraging discriminatory policies regarding persons infected with HIV or at risk for AIDS, and reinforcing the tendency of many persons at risk for HIV infection to remain underground. Nevertheless, we will refrain from taking judicial notice of facts outside the record because we can easily resolve this case without resort to judicial notice of medical facts asserted either by the wife, the husband, or the amici curiae.

■ First of all, even if the wife's testimony should be regarded with the deference afforded to that of an expert witness, we believe that it is insufficient to rebut the statutory presumption of an equal division. A medical expert's opinion, standing alone, that falls short of 'reasonable scientific or medical certainty' is insufficient to support a verdict. *Strong v. State* (1989), Ind., 538 N.E.2d 924; *Glenn v. Board of Com'rs, Harrison County* (1990), Ind.App., 552 N.E.2d 485. An expert's opinion that something is 'possible' or 'could have been' is insufficient by itself to support a material factual question to be proved. *Strong*, 538 N.E.2d at 931.

■ In the present case, the wife testified that—in spite of testing negative for HIV—she feared that she could nevertheless develop AIDS because the test was not conclusive and the virus "could show up at anytime." We believe the evidence in the record taken in its entirety regarding the risk that the wife could develop AIDS is entirely conjecture or speculation and is insufficient to support the wife's claim. We believe that the trial court's decision to award the wife in excess of 50% of the marital estate because the husband "*may have* negligently increased the risk of transmission of the disease to Wife" is plainly based on insufficient evidence. (Emphasis supplied.)

■ Moreover, even if the evidence were not insufficient, the trial court's decision would constitute an abuse of discretion because it is clearly against the logic and effect of the facts and circumstances. The trial court's decision to deviate from an equal split of marital property is based on its finding that there existed a risk that the wife may have been infected with HIV by the husband and therefore was at risk for developing AIDS. The meager medical evidence presented at trial indicates that AIDS is a communicable disease that develops from an HIV infection and is transmitted through bodily fluids or sexual contact. We believe that the evidence presented below necessarily indicates that for the husband to have possibly infected the wife with HIV, he would have to have been infected with HIV himself. Therefore, it necessarily follows that if the wife were to be at all at risk for developing AIDS, the husband would also be at risk for developing AIDS.

It follows further that if the husband is also at risk for AIDS to the same (or even greater) extent as the wife, we can conclude as a matter of law that this risk has an identical impact upon the husband's fu-

ture economic circumstances. Therefore, *absent the injection of fault into the analysis*, the trial court's division of the marital estate in favor of the wife—based upon the risk that the wife might develop a communicable disease for which the husband shares the same risk—is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom and constitutes an abuse of discretion. *See In re Marriage of Salas*, 447 N.E.2d 1176.

We conclude that the trial court's "health and economic circumstances" justification for an unequal division of marital assets in favor of the wife is based upon insufficient evidence and is implicitly based upon fault. In fact, if we were to remove fault from the analysis and take judicial notice of the fact that the wife surely wishes us to take notice of—that gay men are generally at greater risk for developing AIDS than the general population, trial courts should, as general rule, effect property distributions in favor of gay husbands under the "health and economic circumstances" rationale. Therefore, we hold that the trial court's division of marital property in the wife's favor cannot be sustained on the "health and economic circumstances" rationale.

### B.

Whether the trial court's finding that the husband was "under-employed by choice" supports an unequal division of marital assets?

■ Husband attacks the following finding of fact entered by the trial court:

The Court finds that Husband is under-employed by choice. The Court further finds that at the time of Husband's retirement the charge and other indebtedness above referred to was incurred subsequent to Husband's retirement, in large part, by his actions and desire to take a year off from employ.

The Husband asserts the above finding is totally unsupported by the evidence. He admits that he has remained underemployed since losing his job at the department store where he had worked for thirty years. However, he asserts that his under-

employment was not voluntary. He asserts that he was under-employed due to the limited employment opportunities available to middle-aged executives in the late 1980s. He asserts further that his previous salary of $85,000.00 per year has scared away potential employers.

At trial, husband presented his Exhibit 14 in two volumes. The first volume contains 69 letters that husband had sent to prospective employers seeking employment dated from February 1, 1987—before husband lost his job—to February 26, 1990, more than a month after the filing of the dissolution petition. This volume of Exhibit 14 also contains the rejection letters that husband received from these prospective employers. Volume 2 of Exhibit 14 contains classified advertisements from newspapers with employment opportunities in the area of expertise to which the husband made inquiries.

The uncontroverted evidence indicated that, after losing his job, the husband wished to take *two months* off from working in order to travel. The wife testified that she had "absolutely" no objection to the husband's plan to take some time off to travel. The husband took a trip to Australia and New Zealand with a Catholic church group, a two-week trip to Austria and Germany with his wife, and a trip to London.

We are not so much concerned whether or not the complained-of finding is supported with sufficient evidence. We are instead concerned whether—based upon this finding—the trial court's decision to effect an unequal division of marital property is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. We hold that—in spite of the finding of husband's "voluntary underemployment"—the trial court's unequal division of marital property is clearly against the logic and effect of the facts and circumstances and constitutes an abuse of discretion.

The wife asserts that this finding impacts the statutory factors of earning ability, economic circumstances, and dissipation of the marital estate under I.C. 31–1–11.5–

11(c). As for earning ability and economic circumstances, the evidence is undisputed that at the time of the dissolution, the wife earned over three times as much as the husband. And, while husband had earned a salary of $85,000.00 at the end of his thirty-year career with the department store, wife does not contend that husband separated from the department store voluntarily or through any choice of his own. The department store was acquired by another corporation and virtually all managers lost their jobs.

Another statutory factor impacting the trial court's discretion to deviate from an equal split of marital property, 31-1-11.5-11(c)(1), requires the trial court to consider "[t]he contribution of each spouse to the acquisition of property, regardless of whether the contribution was income producing." In the present case, it is undisputed that the husband was the primary breadwinner for nearly all of this marriage which survived nearly 30 years. The husband's pension and IRA account constitute approximately 60% of this one-half million dollar marital estate and—while the pension and IRA account were accumulated by the joint efforts of both spouses as were nearly all of the marital assets of this long-standing marriage—were derived directly from husband's employment.

Considering the totality of the circumstances, we do not believe that the husband's career setback—whether or not it involves voluntary underemployment—provides a reasonable and logical justification to divide the marital estate in the wife's favor. Husband's thirty-year career at the department store directly resulted in the accumulation of the lion's share of the marital estate. We believe that the award in the wife's favor based on the unrepresentative last years of husband's work record is punitive in nature and does not comport with the reasonable and logical effect of the facts and circumstances before the trial court. We conclude that this finding is tainted with fault and the trial court has abused its discretion in dividing the marital property in favor of the wife on the basis of the husband's voluntary underemployment.

Nor do we believe that the trial court's unequal division can be justified by an interpretation of the above finding that husband has dissipated marital assets. Certainly marital debt increased as the result of the disruption in the husband's earnings and his travels during the last two years of the marriage. Nevertheless, even if all of the parties' "credit card" type debt were to be charged to the husband as dissipation of marital resources, the amount of such dissipation would not approach the magnitude of the trial court's deviation from an equal division of marital property. Therefore, we must conclude that—even if the husband is properly chargeable with some dissipation—the trial court's deviation from equality greatly in excess of any such dissipation is punitive in nature and constitutes an abuse of discretion.

We hold that the trial court's finding as set out above—whether or not supported by the evidence—fails to justify the trial court's division of marital property because it is impermissibly tainted by fault. Therefore, we cannot sustain the trial court's deviation from an unequal division of marital assets on the basis of this finding.

We have concluded that the trial court has based its division of marital assets—both expressly and impliedly—on fault. After exacting fault from the analysis, we have found no justification supported by the evidence sufficient to sustain the trial court's finding that the statutory presumption of an equal division has been rebutted. As stated above, we will not tolerate fault as a basis for an unequal division of marital property. Therefore, we must reverse the property distribution portion of the dissolution decree.

This case is unlike the case of *In re Marriage of Davidson*, 540 N.E.2d 641, in which the trial court failed to enter specific findings of fact justifying an unequal division of marital assets. In *Davidson*, we reversed and remanded to the trial court with instructions either to effect an equal distribution of marital property or set forth specific findings based on the evidence jus-

tifying an unequal division of marital property. In the present case, the trial court obviously appreciated its obligation to enter specific findings in effecting an unequal distribution. However, as we have concluded, the trial court's findings are entirely inundated with fault and cannot sustain a deviation from 50/50. After exacting fault from the trial court's findings, no appropriate basis remains to rebut the statutory presumption that an equal division of marital property is just and reasonable. Therefore, we reverse and remand with instructions that the trial court effect an equal distribution of the marital estate. *See id.*, (concurring and dissenting opinion of J. Miller, 540 N.E.2d at 651).

## II.

### Attorney's Fees

The trial court ordered the husband to pay the wife's attorney's fees in the amount of $2,667.30. The trial court entered the following finding with respect to this award:

> The Court finds that a substantial portion of the Wife's fees and costs were incurred because of the valuation issues relating to Husband's refusal to acknowledge his pension benefit as a marital asset and/or the issues relating to the circumstances under which the marriage terminated.

Husband has challenged this award of attorney's fees only to the extent that fees were awarded because of "the issues relating to the circumstances under which the marriage terminated."

 Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to award attorney's fees in the context of dissolution proceedings. *Shumaker v. Shumaker* (1990), Ind.App., 559 N.E.2d 315. However, we believe it is axiomatic that—under the concept of "no-fault divorce"—one spouse may not be penalized by an award of attorney's fees for his or her part in the failure of the marriage. As stated earlier, the issues relating to the reasons why marriages fail are entirely irrelevant to modern divorce proceedings because they necessarily involve the concept of fault.

 We interpret the portion of the trial court's finding about which the husband complains as expressly containing an inappropriate element of fault. Therefore, we must reverse the award of attorney's fees and remand to the trial court with instructions to enter a new award of attorney's fees without regard to the issues relating to the failure of the marriage.

We reverse and remand the property distribution portion of the divorce decree with instructions that the trial court effect an equal division of marital assets. We also reverse and remand the award of attorney's fees with instructions that the trial court effect an award of attorney's fees without consideration of fault.

Judgment reversed.

RATLIFF, C.J., and BAKER, J., concur.