**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**RAMEZAN HAJIZADEH**
Salem, Indiana

ATTORNEY FOR APPELLEE:

**MARYLAND L. AUSTIN**
Corydon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RAMEZAN HAJIZADEH )
)
    Appellant, )
)
      vs. )    No. 88A01-1012-DR-678
)
JO HAJIZADEH n/k/a JO OWENS )
)
    Appellee. )
)

APPEAL FROM THE WASHINGTON SUPERIOR COURT
The Honorable Frank Newkirk, Jr., Judge
Cause No. 88D01-0607-DR-93

**January 18, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The marriage of Ramezan HajiZadeh ("Husband") and Jo HajiZadeh n/k/a Jo Owens ("Wife") was dissolved in Washington Superior Court. Thereafter, the dissolution court entered an amended order dividing the marital property and denying Husband's requests for maintenance, enforcement of a U.S. Citizenship and Immigration Services Form I-864 Affidavit of Support, and attorney fees. Husband appeals and raises several issues, which we restate and renumber as:

> I. Whether the dissolution court abused it discretion in admitting testimony and evidence concerning Husband's misconduct during the marriage;

> II. Whether the dissolution court erred in concluding that Husband was not entitled to payment under the Affidavit of Support;

> III. Whether the dissolution court abused its discretion in denying Husband's request for spousal maintenance;

> IV. Whether the dissolution court abused its discretion in dividing the marital assets; and

> V. Whether the dissolution court abused its discretion in denying Husband's request for attorney fees.

We affirm.

**Facts and Procedural History**

Prior to the marriage, Husband lived in Iran and Wife lived in Salem, Indiana with her two daughters from a previous marriage. After meeting in an internet chat room in 2001, Husband and Wife regularly chatted online and Wife made two trips to Turkey to visit with Husband. On the second of these trips, in October 2002, Husband and Wife were married. Thereafter, Wife returned to the United States and Husband began the process of securing a visa to allow him to immigrate to the United States to live with

2

Wife. As part of this process, Wife and Wife's father, Dan Mattox ("Mattox"), executed a U.S. Citizenship and Immigration Services Form I-864 Affidavit of Support ("Affidavit of Support"), pursuant to which they "agree[d] to provide [Husband] whatever support is necessary to maintain [Husband] at an income that is at least 125 percent of the Federal poverty guidelines." Appellant's App. p. 38. Husband subsequently obtained a visa, and he immigrated to the United States and moved in with Wife in April 2004.

Shortly thereafter, the marriage began to deteriorate. Wife alleged that Husband was violent toward her and that he visited Persian-language dating and pornography websites. Husband alleged that Wife was having an affair with a neighbor. In December 2005, Husband left the marital residence and moved in with Mattox. Then, in March 2006, after being asked to leave Mattox's residence, Husband left the United States and returned to Iran without informing Wife or Mattox of his whereabouts.

Wife filed a petition for dissolution of marriage on July 13, 2006. Although Husband remained in Iran, an attorney entered an appearance on his behalf in the dissolution action in August 2006 and filed petitions requesting spousal maintenance, enforcement of the Affidavit of Support, and attorney fees. Upon his return to the United States in March 2007, Husband lived out of state and continued to conceal his whereabouts from Wife and Mattox.

On January 15, 2009, the dissolution court entered an order dissolving the marriage, but reserved all other issues for further hearing. After several hearings, the dissolution court entered judgment on May 18, 2010. Husband filed a timely motion to

3

correct error, and the dissolution court held a hearing on October 21, 2010. Thereafter, on November 16, 2010, the dissolution court entered an amended order awarding Wife "sole ownership of her residence, real estate, household furnishings, automobiles and children's trust fund, all of which were owned by her prior to her marriage to [Husband] and prior to his arrival in the U.S." Appellant's App. p. 17. Husband was awarded "all personal property, bank accounts and other assets in his possession or titled in his name." Id. The order also denied Husband's requests for enforcement of the Affidavit of Support, spousal maintenance, and attorney fees. Husband now appeals. Additional facts will be provided as necessary.

## Standard of Review

In this case, the dissolution court entered written findings and conclusions pursuant to Wife's request under the provisions of Indiana Trial Rule 52(A). When written findings and conclusions are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review. Maloblocki v. Maloblocki, 646 N.E.2d 358, 361 (Ind. Ct. App. 1995).

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We

4

evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005) (quoting Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001)), trans. denied.

Additionally, where a dissolution court has entered special findings at a party's request pursuant to Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998). Before affirming on a legal theory supported by the findings but not espoused by the dissolution court, we should be confident that our conclusions are consistent with all of the dissolution court's findings of fact and the reasonable inferences flowing therefrom. Id.

## I. Evidence of Misconduct

Husband first argues that the dissolution court abused its discretion in admitting evidence of his misconduct during the marriage. We review decisions concerning the admissibility of evidence for an abuse of discretion. Arlton v. Schraut, 936 N.E.2d 831, 836 (Ind. Ct. App. 2010), trans. denied. An abuse of discretion occurs where the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court or if its decision is without reason or based upon impermissible considerations. Id. However, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Ind. Evidence Rule 103(a); see also Ind. Appellate Rule 66(A) (providing that no error is

ground for reversal "where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties").

As an initial matter, we note that the Indiana Dissolution of Marriage Act, which was enacted in 1971, abolished the previously existing grounds for divorce, which required a finding of fault on the part of one of the spouses. R.E.G. v. L.M.G., 571 N.E.2d 298, 301 (Ind. Ct. App. 1991). Under the Act, "the conduct of the parties during the marriage—except as it relates to the disposition or dissipation of property—is irrelevant to the trial court's division of marital assets." Id.; see also Ind. Code § 31-15-7-5 (2008). Accordingly, this court "will not tolerate the injection of fault into modern dissolution proceedings." R.E.G., 571 N.E.2d at 301.

Here, Wife presented extensive testimony and evidence that Husband had committed acts of domestic violence against her, that he had visited Persian-language pornography and dating websites, and that he abandoned her and concealed his whereabouts. Husband argues that the dissolution court's admission of this evidence establishes that the court was biased against him. However, Husband's argument is disingenuous because it overlooks the fact that Husband was permitted to present extensive testimony and evidence of Wife's misconduct during the marriage. Specifically, he testified at length that Wife had an affair with a neighbor, and he also alleged that Wife had been violent toward him and threatened his life.

Although the dissolution court made several findings concerning the parties' alleged bad acts, it went on to make the following finding:

During the trial of this matter, each party introduced evidence and allegations of immorality and improper behavior on the part of the other spouse. The Indiana Dissolution of Marriage Act which was adopted in 1971 expressly abolished the previously existing grounds for divorce which required a finding of fault. The conduct of the parties during the marriage—except as it relates to the disposition or dissipation of property or to the issue of marital fraud under 8 U.S.C.A. §1227 (G)—is irrelevant to the trial court's division of marital assets.[1]

Appellant's App. p. 13 (citation omitted). Thus, the dissolution court specifically indicated that it considered the parties' conduct only for these limited purposes. Consequently, to the extent that the evidence presented did not relate to either of these purposes, the dissolution court disregarded it and it was therefore harmless.

A dissolution court is clearly permitted to consider the bad acts of the parties to the extent that they relate to the disposition or dissipation of the property. R.E.G., 571 N.E.2d at 301; I.C. § 31-15-7-5. However, the trial court's consideration of the issue of "marital fraud" under 8 U.S.C. § 1227(G) is more problematic.[2] The statute provides that

An alien shall be considered to be deportable as having procured a visa or other documentation by fraud . . . and to be in the United States in violation of this chapter . . . if--
(i) the alien obtains any admission into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than 2 years prior to such admission of the alien and which, within 2 years subsequent to any admission of the alien in the United States, shall be judicially annulled or terminated, unless

---

[1] The trial court also found that the parties' conduct during the marriage was relevant to the extent that it related to "whether [Husband] made performance of the Affidavit of Support Impossible by his conduct." Appellant's App. p. 17. Because an action to enforce an Affidavit of Support is essentially one for breach of contract, see Shumye v. Felleke, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008), it was appropriate for the dissolution court to consider Husband's conduct for this purpose.

[2] Indiana law also recognizes the concept of marital fraud, but in a very different context. Under Indiana Code section 31-11-9-3 (2008), marriages brought about through fraud are voidable. Accordingly, the alleged victim of marital fraud may file an action to annul the marriage. Ind. Code § 31-11-10-2 (2008). Here, neither Husband nor Wife sought an annulment of the marriage, so the issue of marital fraud under Indiana law is irrelevant here.

7

the alien establishes to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws, or

(ii) it appears to the satisfaction of the Attorney General that the alien has failed or refused to fulfill the alien's marital agreement which in the opinion of the Attorney General was made for the purpose of procuring the alien's admission as an immigrant.

8 U.S.C. § 1227(G). It is apparent from the plain language of the statute that marital fraud as defined therein relates only to an alien's immigration status and deportability. Such considerations are wholly irrelevant in a dissolution proceeding, and it was therefore improper for the dissolution court to consider the issue of marital fraud under 8 U.S.C. § 1227(G).[3] But the dissolution court made no finding that marital fraud actually occurred in this case. Thus, to the extent that the trial court erred in considering the issue of marital fraud under 8 U.S.C. § 1227(G), the error had no effect on its final ruling and was therefore harmless. For all of these reasons, we conclude that any error in the admission of evidence concerning Husband's misconduct during the marriage was harmless.[4]

## II. Enforcement of Affidavit of Support

Next, Husband argues that the dissolution court erred in denying Husband's petition to enforce the Affidavit of Support. Under federal immigration laws, immigrants

---

[3] It appears that the dissolution court may have actually considered the issue of marital fraud in the context of determining whether Husband had fraudulently induced Wife to sign the Affidavit of Support. See Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 283 (Ind. 1983) (noting that contracts induced by fraud are voidable).

[4] Husband also takes issue with the dissolution court's findings concerning the specific bad acts committed by Husband and Wife. Husband essentially argues that the findings concerning his misconduct are clearly erroneous because Wife's evidence and testimony concerning Husband's bad acts was not credible, and that the trial court should have believed his evidence concerning Wife's misconduct and entered more findings to that effect. These are simply requests to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal.

who are likely to become public charges are deemed inadmissible. 8 U.S.C. § 1182(a)(4); Shumye v. Felleke, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008). Accordingly, "[f]amily-sponsored immigrants seeking admission are admissible only if the person petitioning for the immigrants' admission signs an Affidavit of Support Form I-864. A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant." Id. Thus, a sponsored immigrant may bring an action to enforce an Affidavit of Support against the sponsor in any federal or state court. Moody v. Sorokina, 830 N.Y.S.2d 399, 401 (N.Y. App. Div. 2007). Moreover, the sponsor's obligation under an Affidavit of Support does not terminate in the event of a divorce. Younis v. Farooqi, 597 F. Supp. 2d 552, 554 (D. Md. 2009); Shumye, 555 F. Supp. 2d at 1024.

By executing an Affidavit of Support, the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable[.]" 8 U.S.C. § 1183a(a)(1)(A); see also Appellant's App. p. 38. In concluding that Husband was not entitled to payment under the Affidavit of Support, the dissolution court made the following findings:

> 34. [Husband] acknowledged that he has, from March 2006 to the present, kept his address and whereabouts a secret from his co-sponsors. Although he claims that [Wife] told him he could become a "cold case" she denied the statement and there is no objective proof that the statement was made.
> * * *
> 37. [Husband] lived in the homes of his co-sponsors from the time of his arrival in the U.S. in April 2004 until he flew back to Iran in March 2006, where he remained until March 2007.

9

38. During the time he lived in the homes of his co-sponsors, they provided in-kind support as required by the Affidavit of Support and owed no additional cash payment to [Husband] for the years 2004, 2005, and the first two months of 2006.

39. [Husband] acknowledged that in the years 2007, 2008, and 2009 his income exceeded 125% of federal poverty level, eliminating any requirement of contribution by the sponsors under the Affidavit of Support for those years.

40. [Husband] testified that he has applied for U.S. citizenship and that he should receive U.S. citizenship during the year 2010, which would permanently terminate any support duty owed under the Affidavit of Support.

41. The only time period for which the co-sponsors owed and failed to provide support under the Affidavit of Support is the period of March through December, 2006, after [Husband] left Daniel Mattox's residence and returned to Iran. He was asked to leave the residence based upon his conduct and breakdown of the relationship.

42. [Husband] himself rendered impossible the performance of the co-sponsors' obligation under the Affidavit of Support during the period in which he returned to Iran and kept his whereabouts concealed from his co-sponsors, and he should not now he entitled to specific enforcement of that obligation for the period of March through December, 2006.

Appellant's App. pp. 14-15.

On appeal, Husband does not dispute that 2006 is the only year for which he might be entitled to support.[5] Rather, he argues that the dissolution court erred in concluding that he rendered performance of the contract impossible by concealing his whereabouts from his sponsors. Husband does not deny that he concealed his whereabouts, but contends that he was forced to do so out of fear for his life because Wife had threatened him.[6] However, Wife denied threatening Husband, and it is apparent from the dissolution

---

[5] Husband argues that his income for that year was $5,231 and that 125% of the federal poverty guideline for that year was $12,250, leaving a deficit of $7,019. Appellant's Br. at 27.

[6] Husband also contends that although his sponsors were not aware of his physical location, they were aware that he had executed a power of attorney in favor of Keith Groth, and that they should have sent support to Groth's address. The record supports Husband's assertion that Wife was aware that he had executed a power of attorney in Groth's

court's findings that it did not find Husband's testimony concerning the alleged threats credible. Thus, Husband's argument in this regard is simply a request to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal.

Where performance of a contract becomes impossible, nonperformance is excused, and no damages can be recovered. Dove v. Rose Acre Farms, Inc., 434 N.E.2d 931, 935 (Ind. Ct. App. 1982); see also Bernel v. Bernel, 930 N.E.2d 673, 683 (Ind. Ct. App. 2010) (noting that impossibility of performance excuses breach of an executory contract), trans. denied; Rogier v. Am. Testing & Eng'g Corp., 734 N.E.2d 606, 620 (Ind. Ct. App. 2000) (noting that "the common law of contracts excuses performance of one party where the other party wrongfully prevents that performance"), trans. denied. Evidence was presented at trial that Husband was provided with support as required under the Affidavit of Support until March 2006, when he left Mattox's home and returned to Iran without informing his sponsors. Husband's conduct in deliberately concealing his whereabouts made it impossible for his sponsors to continue to provide support. Accordingly, we cannot conclude that the trial court erred in concluding that Husband was not entitled to recover damages under the Affidavit of Support.

### III. Spousal Maintenance

---

favor. However, Husband did not argue that Wife should have sent support to Groth in his pretrial briefings or in his motion to correct error, and he has not directed our attention to any portion of the record indicating that he raised this argument at any hearing. Because Husband raises this argument for the first time on appeal, we will not consider it. See Babinchak v. Town of Chesterton, 598 N.E.2d 1099, 1103 (Ind. Ct. App. 1992) (noting that we will not consider arguments raised for the first time on appeal).

Next, Husband argues that the dissolution court abused its discretion in denying his request for spousal maintenance. An award of spousal maintenance is within the dissolution court's sound discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. Augspurger v. Hudson, 802 N.E.2d 503, 508 (Ind. Ct. App. 2004). In determining whether the dissolution court has abused its discretion in making its spousal maintenance determination, we presume that the dissolution court properly considered the applicable statutory factors in reaching its decision. Bizik v. Bizik, 753 N.E.2d 763, 769 (Ind. Ct. App. 2001), trans. denied. Our task is limited to determining whether there is sufficient evidence to support the dissolution court's judgment. Moore v. Moore, 695 N.E.2d 1004, 1008 (Ind. Ct. App. 1998).

Under Indiana Code section 31-15-7-2 (2008), a court may order spousal maintenance in three circumstances: (1) where a spouse is physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected; (2) where the spouse is the custodian of a child whose physical incapacity requires the custodian to forego employment; and (3) where the dissolution court finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. Cannon v. Cannon, 758 N.E.2d 524, 525-26 (Ind. 2001) (citing Voigt v. Voigt, 670 N.E.2d 1271, 1276-77 (Ind. 1996)).

Here, Husband makes no argument that he is incapacitated or that he is the custodian of an incapacitated child. Therefore, the only type of maintenance he could

receive is rehabilitative maintenance under Indiana Code section 31-15-7-2(3). But Husband does not argue in his Appellant's brief that he needs or intends to seek additional education or training in order to obtain an appropriate job.[7] Rather, he simply argues that he is entitled to maintenance because Wife has more income and assets than him. Husband's assertion that Wife's income exceeds his is dubious, but even assuming that it is true, a disparity between the spouse's incomes, standing alone, will not support an award of spousal maintenance. See I.C. § 35-17-7-2. We therefore conclude that the dissolution court did not abuse its discretion in denying Husband's request for maintenance.

### IV. Division of Property

Next, Husband argues that the dissolution court abused its discretion in dividing the marital assets. The disposition of marital assets is within the dissolution court's sound discretion, and we will reverse only for an abuse of that discretion. Eye v. Eye, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). In so doing, we consider only the evidence most favorable to the dissolution court's decision, without reweighing the evidence or assessing the credibility of witnesses. Id. A dissolution court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if it has misinterpreted the law or disregards evidence of factors listed in the controlling statute. Id.

---

[7] Husband raises an argument concerning his alleged need for further education for the first time in his reply brief. However, parties are not permitted to present new arguments in their reply briefs, and an argument an appellant fails to raise in his initial brief is waived for appeal. Kelly v. Levandoski, 825 N.E.2d 850, 857 n.2 (Ind. Ct. App. 2005), trans. denied; see also Indiana App. R. 46(C). It also appears that Husband failed to raise any such argument before the trial court. Accordingly, Husband has waived appellate consideration of this argument.

13

Husband first contends that the dissolution court abused its discretion by allowing Wife to retain specific items of Husband's personal property. As an initial matter, we note that our supreme court has held that a dissolution court's disposition of marital property is to be considered as a whole, not item by item. Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). And even assuming that the property belonged to Husband before or during the marriage and that Wife was allowed to retain the property, it is well established that all of the spouses' property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to the parties' final separation, or acquired by their joint efforts. Hill v. Hill, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007); see also Indiana Code § 31-15-7-4(a) (2008). This "one-pot" theory ensures that all of the parties' assets are subject to the dissolution court's power to divide and award. Hill, 863 N.E.2d at 460. "While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided." Id. Thus, the dissolution court was required to include the property in the marital estate, and the fact that the property was allegedly owned by Husband before or during the marriage, without more, does not make the dissolution court's decision to award such property to Wife an abuse of discretion.

Pursuant to Indiana Code section 31-15-7-5 (2008), the dissolution court is required to divide the marital estate in a just and reasonable manner. An equal division is presumed just and reasonable, but a party may rebut this presumption by presenting

evidence that an equitable division would not be just and reasonable, including evidence concerning the following factors:

> (1) The contribution of each spouse to the acquisition of property, regardless of whether the contribution was income producing.
> (2) The extent to which the property was acquired by each spouse:
> > (A) before the marriage; or
> > (B) through inheritance or gift.
> 
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> (5) The earnings or earning ability of the parties as related to:
> > (A) a final division of property; and
> > (B) a final determination of the property rights of the parties.

Id. A party challenging the dissolution court's division of marital property must overcome a strong presumption that the dissolution court "'considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal.'" McCord v. McCord, 852 N.E.2d 35, 43 (Ind. Ct. App. 2006), trans. denied (quoting DeSalle v. Gentry, 818 N.E.2d 40, 44 (Ind. Ct. App. 2004)). Accordingly, we will reverse a property distribution only if there is no rational basis for the award, and although the circumstances may have justified a different property distribution, we may not substitute our judgment for that the trial court. Augspurger, 802 N.E.2d at 512.

The dissolution court made the following relevant findings and conclusions with regard to its division of the marital assets in this case:

15

# FINDINGS OF FACT

* * *

8. [Wife] hired an immigration attorney and paid approximately $2,000.00 in legal fees to obtain a Visa for [Husband] to enter the United States.

* * *

11. On June 11, 2004, at [Husband's] request, [Wife] sent a wire transfer of $12,800.00 to a United Arab Emirates account for [Husband].

* * *

17. On January 17, 2006, the parties' joint National City Bank account statement shows that a deposit of $1,056.49 was made and an NWA airline ticket was purchased for $1,241.28.

* * *

21. [Husband] testified that he flew back to Iran on March 17, 2006, and remained there until March 1, 2007.

* * *

44. [Husband] acknowledged that he did not contribute in any way to the acquisition of [Wife's] residence, real estate, household furnishings, automobiles or children's trust fund, all of which were owned by [Wife] prior to her marriage to [Husband] and prior to his arrival in the U.S..

45. Although [Husband] participated in making improvements to the real estate, [Wife] purchased all tools and materials and [Husband's] contribution of labor was in lieu of any outside earnings while he was fully supported by [Wife].

46. [Husband] acknowledged that the parties did not acquire any residence, real estate, vehicles or furniture during the marriage.

47. [Wife's] premarital property has never been commingled nor placed in [Husband's] name either individually or jointly with [Wife] and her children.

48. [Wife's] residence is home to her two children, for whom she is sole custodian, and her elderly parents, for whom she is primary caregiver. Substantial cash assets are in a trust fund for her children.

49. All property owned by the parties at the time of the filing of the petition for dissolution is marital property, regardless of how titled or acquired.

50. The presumption of an equal division of the marital property between the parties is just and reasonable is rebutted by [Wife's] relevant evidence that an equal division would not be just and reasonable in consideration of

16

the fact that the marital property was acquired by her prior to the marriage, that [Husband] made no contribution toward the acquisition of the property or the accumulation of the property, and the property was never commingled with joint marital assets.

51.   [Wife] paid [Husband's] travel expenses and immigration attorneys and enabled him to immigrate to the United States and seek U.S. citizenships, and sent a wire transfer of $12,800 to a United Arab Emirates account for [Husband] in 2004; these amounts are deemed adequate compensation for any interest [Husband] may have acquired in any property retained by [Wife].

\* \* \*

54.   Although [Husband] claims to have incurred $40,000.00 in credit card debt, he has engaged in International travel and incurred such debt primarily after the separation of the parties for his sole benefit.

### CONCLUSIONS OF LAW AND JUDGMENT
\* \* \*

6.   All property owned by the parties at the time of the filing of the petition for dissolution is marital property, regardless of how titled or acquired.

7.   The presumption that an equal division of the marital property between the parties is just and reasonable has been rebutted by relevant evidence.

\* \* \*

9.   [Wife] shall retain sole ownership of her residence, real estate, household furnishings, automobiles and children's trust fund, all of which were owned by her prior to her marriage to [Husband] and prior to his arrival in the U.S.

10.   [Husband] is awarded as his sole and separate property all personal property, bank accounts and other assets in his possession or titled in his name.

\* \* \*

12.   Each party shall be solely responsible for any debts incurred in their sole name.

Appellant's App. pp. 11-17.

Based on the findings concerning Wife's acquisition of the bulk of the marital property prior to the marriage, we cannot conclude that the dissolution court abused its discretion in determining that Wife rebutted the presumption in favor of an equal division of marital property. Husband does not appear to suggest that this presumption was not rebutted or that he should have been awarded half of the marital assets; rather, he appears to assert that the trial court's ultimate division of marital assets was not just and reasonable. Specifically, he argues that in light of various contributions he made to the household during the marriage and his post-separation living expenses, he should have been awarded a greater percentage of the marital assets.[8]

The evidence favorable to the dissolution court's judgment reveals that Husband and Wife lived together for only twenty months, and the only significant assets in the marital estate are those acquired by Wife prior to the marriage without any contribution from Husband.[9] Moreover, Wife is unemployed and has only completed one year of

---

[8] Husband also seems to take issue with dissolution court's finding that Husband "made no contribution toward the acquisition of the property or the accumulation of the property[.]" Appellant's App. p. 15. Specifically, he asserts that he made various contributions to the household during the marriage, some income-producing and some not. However, the dissolution court's finding that Husband made no contribution to the acquisition of the property was clearly referring only to the property Wife acquired prior to the marriage. It is undisputed that Husband made no contribution to the acquisition of Wife's premarital property; accordingly, the dissolution court's finding was not clearly erroneous.

[9] Husband alleges that Wife purchased a modular home valued at $60,000 during the marriage. However, the trial court found that Wife owned all real estate prior to the marriage, and Husband testified at trial that no real estate, automobiles, or furniture were purchased between April 2004, when he arrived in the United States, and March 1, 2007, well after the date of the parties' final separation. Appellant's App. p. 244. Aside from his own self-serving statement made in a pretrial briefing, which the dissolution court was in no way bound to find credible, Husband has not directed our attention to any evidence of record supporting his assertion that Wife purchased the modular home during the marriage. Husband also alleges that during the marriage, he and Wife purchased jewelry from Turkey valued at $20,000. However, Wife testified that "shipments of gold and silver jewelry would come to her home and that she didn't know where it came from or what happened to it after it arrived." Appellant's App. p. 185. Accordingly, Husband's arguments in this regard are requests to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal.

18

post-secondary study. Husband, on the other hand, has a Bachelor of Science degree, and at the time of the final hearing in this case, he was employed as a salesman. His income exceeded $30,000 in 2009. Additionally, although Wife does not receive social security disability benefits, she suffers from significant health problems including fibromyalgia and three herniated discs, and she is the primary caregiver for her two daughters and her elderly parents.[10] Husband is apparently in good health, and at the time of the final hearing, he had no dependents.

Additionally, under the dissolution court's judgment, Wife was made responsible for significant marital debt, including a $42,000 mortgage. We also note that during the marriage, Wife paid Husband's travel expenses, $2,000 in legal fees in order to help Husband obtain a visa, and she made $12,800 wire transfer to Husband while he still lived in Iran in order to help him pay off a mortgage and a car. Appellant's App. pp. 184-85. The dissolution court concluded that these payments were sufficient to compensate Husband for any property interest he acquired in the property retained by Wife. Under these facts and circumstances, we cannot conclude that there was no rational basis for the dissolution court's award. Husband's arguments to the contrary are simply requests to

---

[10] Husband argues that Wife's income greatly exceeds his, but in calculating Wife's income and assets, Husband includes social security benefits that he alleges are received by several members of Wife's household, including Wife's daughters, Wife's mother and father, and Wife's ex-husband's father. Husband cites no authority and makes no argument supporting a conclusion that social security income received by other members of Wife's household should be attributable to Wife for the purposes of property division. Accordingly, this argument is waived for failure to make a cogent argument. See Romine v. Gagle, 782 N.E.2d 369, 386 (Ind. Ct. App. 2003), trans. denied; Ind. Appellate Rule 46(A)(8)(a). Similarly, Husband lists among Wife's assets a trust fund belonging to Wife's daughters, which was apparently funded with settlement proceeds originally paid to the girls' now deceased father, but again, he cites no authority and makes no argument supporting the conclusion that property not belonging to Wife should be included in the marital estate. This argument is likewise waived for failure to make a cogent argument. Moreover, it is undisputed that the trust fund was acquired prior to the parties' marriage.

reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal. The dissolution court did not abuse its discretion in dividing the marital estate.

### V. Attorney Fees

Finally, Husband argues that the dissolution court abused its discretion by denying his request for attorney fees. Indiana Code section 31-15-10-1 (2008) provides that the dissolution court *may* order a party to pay a reasonable attorney fee for the opposing party. We review a dissolution court's decision to award attorney fees for an abuse of discretion. Thompson v. Thompson, 811 N.E.2d 888, 927 (Ind. Ct. App. 2004), trans. denied. However, Indiana Code section 31-15-10-1 does not affirmatively require the dissolution court to award attorney fees and "[t]here is no abuse of discretion for the trial court not to do that which it is not required to do." Russell v. Russell, 693 N.E.2d 980, 984 (Ind. Ct. App. 1998) (citing Maloblocki v. Maloblocki, 646 N.E.2d 358, 364 (Ind. Ct. App. 1995)), trans. denied.

Husband argues that he is entitled to attorney fees because Wife's income greatly exceeds his. As we have previously noted, Husband's contention that Wife's income exceeds his is dubious, but even assuming that it is true, "a trial court is not required to award fees based on disparity of income alone." Id. Because the dissolution court was not affirmatively required to award attorney fees under Indiana Code 3-15-10-1, it did not abuse its discretion by denying Husband's request.

Husband also asserts that he is entitled to recover attorney fees and costs of collection relating to his petition to enforce the Affidavit of Support. See 8 U.S.C. §

1183a(c) (providing that the remedies available to enforce an Affidavit of Support include "payment of legal fees and other costs of collection"). However, we have affirmed the dissolution court's conclusion that Husband is not entitled to damages under the Affidavit of Support. Because Husband was unsuccessful in his attempt to seek damages under the Affidavit of Support, we must conclude that he is not entitled to recover attorney fees under 8 U.S.C. § 1183a(c). See Iannuzzelli v. Lovett, 981 So.2d 557, 560-61 (Fla. Dist. Ct. App. 2008) (holding that "[i]n order to recover attorney's fees and costs under 8 U.S.C. § 1183a(c), the claimant must obtain a judgment for actual damages based upon the opposing party's liability under the Affidavit.").

## Conclusion

Any error in the admission of evidence concerning Husband's misconduct during the marriage was harmless. The dissolution court did not err in denying Husband's petition to enforce the Affidavit of Support, nor did it abuse its discretion in denying Husband's request for maintenance, in dividing the marital property, or in denying Husband's request for attorney fees.

Affirmed.

BAILEY, J., and CRONE, J., concur.