**Lola STRONG, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 1185 S 487.**

Supreme Court of Indiana.

May 22, 1989.

Mark A. Ryan, Merritt & Troemel, Kokomo, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellant Lola Strong directly appeals her convictions for murder, involuntary manslaughter, reckless homicide, battery causing serious bodily injury, neglect of a dependent causing serious bodily injury, and criminal confinement causing serious bodily injury. The trial court sentenced the defendant as follows: murder, 50 years; involuntary manslaughter, 5 years; reckless homicide, 5 years; battery, 8 years; criminal confinement, 10 years; and neglect of a dependent, 10 years. The trial court ordered that the sentences for murder, involuntary manslaughter, reckless homicide, and criminal confinement be served concurrently, and that the sentences for battery and neglect of a dependent be served concurrently, but consecutive to the sentences for the other four crimes.

The defendant raises the following issues for review:

1) requiring defendant's co-counsel to testify during competency hearing of State's minor witness;
2) competence of child witness;
3) admissibility of photographic evidence of victim's injuries;
4) cross-examination of State's witness;
5) admission of taped statement;
6) refusal to give tendered instructions;
7) sentencing;
8) sufficiency of evidence.

To facilitate discussion of these issues, the following brief summary of evidence favorable to the judgment is provided. At the time of the charged offenses, March 1, 1984, the defendant had been caring for her three grandchildren: Henry Couturier, the victim, age 3; Tony Strong, age 7; and Heather Couturier, age 1. That evening, when Henry and Tony argued over a toy, the defendant became angry with Henry, hit him several times, and then dragged him into the bathroom where she held his head over the sink and poured water over his face. She then grabbed Henry by the hair and struck his head against the side of the bathtub. The defendant then forced Henry to eat a cigarette. Not long after being allowed to leave the bathroom, Henry passed out. An ambulance was called, and Henry was rushed to the hospital. An emergency room examination revealed that hair had been pulled from the side of the victim's head, that there were numerous bruises on his body, that his face was covered with abrasions, that his lips were burned, and that he had swelling in various areas of the head, implying that he had been struck many times. Medical tests revealed brain swelling caused from a blow of severe impact. Henry did not recover from his injuries and died on March 8, 1984.

### 1. Defense Counsel's Testifying

The defendant argues that her right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution was substantially in-

fringed during the competency hearing of State's witness Tony Strong when her "lead" counsel, Michael Troemel, was called to the stand.

Several months prior to the competency hearing, the defendant's co-counsel, Troemel and Mark Ryan, tape-recorded an interview with Tony Strong. The defendant provided the State a transcribed copy of the statement prior to trial. At the hearing, during cross-examination of Tony Strong, the defense questioned him about the prior statement. Following the defense counsel's admission that the original recording had been accidentally erased after its transcription, the trial court permitted the State to call Troemel to the stand. Troemel was required to read a portion of the transcribed statement relating to Tony Strong's ability to differentiate between the truth and a lie. At all times during Troemel's testimony, co-counsel Ryan remained and actively served as trial counsel for the defendant. Troemel's testimony occurred during the competency hearing, out of the presence of the jury.

The defendant now argues that "requiring Troemel to testify on behalf of the State ... permitted the State to use defense counsel's work. product and trial preparation" and thereby "directly infringed upon [the defendant's] right to effective assistance of counsel."

The defendant does not claim that her attorney was required to divulge confidential communications in violation of the statutory privilege.[1] Rather, she argues that by requiring her attorney to testify on behalf of the State and permitting the State to use defense counsel's work product and trial preparation, the defendant's right to effective assistance of counsel was infringed, resulting in fundamental error. Under the particular circumstances of this case, we disagree.

Troemel's testimony consisted solely of reading a portion of his prior interview with Tony Strong. Troemel had previously furnished a copy of the transcription to the prosecutor. The content of his testimony did not provide evidence of any elements of the charged offense. Nor did it constitute the sole basis on which Tony Strong was found to be competent to testify.

We agree with the State's contention that requiring Troemel to testify did not constitute a material interference with his function as an advocate or operate to deprive the defendant of a fair trial. The testimony occurred out of the presence of the jury, and the defendant's co-counsel remained present and actively participated. Merely requiring a defendant's lawyer to testify does not alone constitute a material interference with his function as an advocate. *United States v. Freeman* (9th Cir. 1975), 519 F.2d 67. We find no error on this issue.

### 2. Competence of Child Witness

Children younger than age ten are not competent witnesses in Indiana "unless it appears that they understand the nature and obligation of an oath." Ind.Code § 34–1–14–5. The defendant urges that the trial court erred in its determination that the State's eight-year-old witness, Tony Strong, was competent to testify. The defendant concedes that the evidence established that Tony understood the difference between the truth and a lie, but argues that the State failed to establish that Tony Strong knew he was under a compulsion to tell the truth.

Under Ind.Code § 34–1–14–5, a child is competent if the court finds: (1) that the child knows the difference between telling the truth and telling a lie and (2) that the child knows of the need to tell the truth. *LeMaster v. State* (1986), Ind., 498 N.E.2d 1185. The determination of a child's competence lies within the trial court's discretion, because it has the opportunity to observe the child's intelligence, demeanor, and maturity. *Lindsey v. State* (1984), Ind., 465 N.E.2d 721. This Court's deference to the trial court's conclusion has been expressed as follows:

> In reviewing such a determination, we recognize that our examination of the transcribed record of the questioning

---

1. Ind.Code § 34–1–14–5.

cannot compare with the trial court's personal presence at the hearing as a basis for resolution of the issue. We, therefore, entrust this determination to the discretion of the trial court and will reverse only where we find clear error, where there is no evidence from which the trial court could have found that the child understood the nature and obligation of an oath.

LeMaster, 498 N.E.2d at 1187–88 (quoting Johnson v. State (1977), 265 Ind. 689, 692, 359 N.E.2d 525, 528).

During the competency hearing, Tony Strong was questioned by the prosecutor, by defense counsel, and by the trial judge. Upon the issue of the child's compulsion to tell the truth, there was evidence that Tony knew that he was supposed to tell the truth in court, that he would get in trouble if he didn't, that it was important to tell the truth in court, and that the important things being decided required that he tell exactly what happened in the past.

The trial court's competency determination was not an abuse of discretion.

### 3. Admission of Photographs and Slides

■ At trial, emergency room nurse Susan Keenan testified that she photographed the injuries on March 1, 1984, after Henry arrived at the hospital's emergency room. The State offered into evidence State's exhibits 1–6, photographs of the victim taken on March 1, 1984. Keenan identified State's exhibits 7–10 as photographs of Henry in the surgical intensive care unit taken March 3, 1984. State's exhibit 11, slides 1–5 and 8–16, depict him on March 1, 1984, in the emergency room, while slides 6 and 7 portray the victim in the autopsy room. Slides 1–16 (excluding slides 3, 8, and 13, which were not admitted into evidence) were employed by Dr. Arthur Jay, the pathologist who performed the autopsy, during his testimony describing his autopsy findings.

The defendant recognizes the general rule that the admission of photographs is within the sound discretion of the trial court and will not be disturbed absent abuse of that discretion. Thompson v. State (1986), Ind., 492 N.E.2d 264. However, the defendant argues in this appeal, as she did at trial, that the admission of State's exhibits 4, 5, 7, 8, 9, 10, and 11, slides 2, 4, 5, 9, 10, 11, 12, 14, 15, and 16, by the trial court was cumulative, irrelevant and prejudicial. We disagree.

Admissibility of photographs is dependent upon their relevance, and relevance is determined by whether a witness would be permitted to describe what the photograph depicts. Boyd v. State (1986), Ind., 494 N.E.2d 284, cert. denied (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860. Autopsy photographs that are illustrative of witness testimony and that tend to prove the cause of death are also admissible under the above principle. Walker v. State (1980), 274 Ind. 197, 409 N.E.2d 626. When various photographs are used to demonstrate evidence that is properly admitted when described verbally, the fact that they are cumulative to some extent does not bar their admission. Watkins v. State (1988), Ind., 528 N.E.2d 456. To ascertain the prejudicial nature of photographs, the trial court must balance the probative value of the evidence against its potential to inflame the jury. The trial court's decision will not be disturbed absent a showing of clear error. Fine v. State (1986), Ind., 490 N.E. 2d 305.

The exhibits objected to by the defendant served to explain the testimony offered at trial. The exhibits facilitated the jury's understanding of the nature and extent of Henry's injuries. Our review reveals no abuse of discretion by the trial court in the admission of these exhibits.

### 4. Restriction of Cross–Examination of Police Officer

■ The defendant next contends that the trial court erred in limiting her cross-examination of Lafayette Police Lieutenant Jerry Loy, the primary investigating officer in the case. During cross-examination, the defendant sought to impeach Lieutenant Loy by establishing his bias through questions seeking to establish that the officer's motives included aiding the State "in

getting a murder conviction," and assuring "that people who abuse children are not going to get away with it." During cross-examination, Lieutenant Loy testified that his duties involve a great deal of work with juveniles and child abuse cases, that he has a "great commitment to children to which he is sincerely dedicated, and that part of his motivation is to be a protector of children."

While the constitutional right of confrontation requires that a defendant be afforded an opportunity to conduct a full, adequate, and effective cross-examination, a trial judge may impose reasonable limits which will not warrant reversal absent a clear abuse of discretion. *Coates v. State* (1989), Ind., 534 N.E.2d 1087. We find no abuse of discretion shown by the record on this issue.

### 5. Admission of Tape Recording and Transcript

■ The defendant contends the trial court erred in admitting State's exhibits 20 and 21, a tape recording of the defendant's voluntary statement given to police the day after the victim was taken to the hospital and the typed transcription of that statement. She argues on appeal, consistent with her objections at trial, that the tape recording contains matters otherwise inadmissible as hearsay or irrelevant evidence. Having been furnished in advance with a transcription of the recording, the defendant at trial identified only one example of alleged inadmissible matter. This court will not address the admissibility of portions for which there was no objection presented at trial.

At trial, the defendant explicitly objected only to the following questions by the police officers:

Q. Okay. There's a lot of things, Lola, I want to caution you on one thing. Physical evidence proof, stuff that Lt. Loy saw and found in your house on that night.
A. Yes and I told him everything about that.
Q. Doesn't match stuff that you tell us....

These statements by the police officer were not inadmissible hearsay because they were not offered as proof of the facts asserted therein. The limited function of the police questions was explained to the jury at the time the recording was played with the following admonishment from the trial judge at the request of defense counsel:

On the tape there are some statements made by Mr. Loy and by Detective Rhodes, the other police officer, and I want to instruct you that what the police officers say in the course of the interview, the police officers [sic] information, whatever they say is not evidence and is not to be considered by you as evidence. But is to be considered only as questioning and questions in order to elicit information to draw out information from Mrs. Strong. There are certain things that the police officers say and representations that they make that may or may not be true. They are not to be considered as evidence other than to bring out information from Mrs. Strong. Okay.

We find no error on this issue.

### 6. Refusal of Tendered Instructions

The defendant next argues the trial court erred in refusing her tendered instructions 8, 9, and 10 regarding post-trial proceedings following a verdict of not responsible by reason of insanity or a verdict of guilty but mentally ill.

■ The defendant acknowledges this Court's prior holding that she is not entitled to have the jury instructed on the statutory procedure to be followed upon a verdict of not responsible by reason of insanity unless an erroneous view of the law has been presented to the jury. *Palmer v. State* (1985), Ind., 486 N.E.2d 477. The same reasoning is necessarily applicable to a verdict of guilty but mentally ill.

We decline the defendant's request that this Court reconsider this rule and hold that defendants should be entitled to final instructions regarding post-trial proceedings following a verdict of not responsible

by reason of insanity or a verdict of guilty but mentally ill.

The defendant also argues that the State presented an erroneous view of the law to the jury through certain statements during final argument and that therefore her refused instructions should have been given, under the exception to the *Palmer* rule. We disagree. As in *Palmer*, the instructions given did not here convey an erroneous impression of the law.

We find no error in the trial court's refusal of the defendant's tendered instructions 8, 9, and 10.

### 7. Sentencing

Convicted of murder, involuntary manslaughter, reckless homicide, battery causing serious bodily injury, neglect of a dependent causing serious bodily injury, and criminal confinement causing serious bodily injury, the defendant argues that the trial court erred in its imposition of multiple convictions in this case. She is substantially correct, as the State concedes.

■ The defendant's convictions and sentences for involuntary manslaughter and reckless homicide must be vacated in view of her murder conviction. Where there is a killing of one human being, only one sentence may be imposed for that killing. *Birkla v. State* (1981), Ind., 425 N.E. 2d 118. Her sentence and conviction for battery must also be vacated because battery is a lesser offense included within the greater crime of murder as it was alleged to have been committed in the information. *Swafford v. State* (1981), Ind., 421 N.E.2d 596. Her sentence and conviction for neglect of a dependent causing serious bodily injury must further be vacated in view of the conviction for murder. *Hall v. State* (1986), Ind., 493 N.E.2d 433.

■ The defendant's convictions and sentences for murder and criminal confinement causing serious bodily injury do not fall prey to her double jeopardy claims. The convictions and sentences on both of these charges do not violate the prohibition against double jeopardy because each offense requires proof of at least one element not included in the other. *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. A murder conviction does not require proof that the victim was forcibly removed, while the commission of criminal confinement does not require proof of a resulting death. *Catrabone v. State* (1986), Ind., 490 N.E.2d 272. The defendant was not sentenced twice for the same offense; therefore, her murder and criminal confinement convictions shall stand.

The defendant also argues that the trial court erred in imposing enhanced and consecutive sentences. She argues that the sentences imposed are not supported by the record and constitute an abuse of discretion.

■ ■ Indiana Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250; *Jones v. State* (1984), Ind., 467 N.E.2d 681. If otherwise adequate and complete, the sentencing statement need not be set out in a separate order book entry except in death penalty cases, but may be provided in the transcript of the sentencing hearing. *Hill v. State* (1986), Ind., 499 N.E.2d 1103.

In addition to the discussion set forth in the separate sentencing order, this Court has reviewed the trial court's thoughtful comments at the conclusion of the sentencing hearing. Taken together, the trial court clearly identifies the significant mitigating and aggravating circumstances and supporting facts and reasons. Likewise, the trial court's careful articulation demonstrates that the circumstances have been

evaluated and balanced, as required by statute.

We therefore conclude that the trial court did not err in its enhancement of the defendant's murder sentence.[2]

### 8. Sufficiency of Evidence

The defendant lastly argues insufficiency of the evidence. She admits she caused the injuries to the victim on March 1, 1984, but claims insufficient evidence exists in the record to establish that those injuries were the cause of the victim's death.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Dr. Arthur C. Jay performed an autopsy on the victim on March 8, 1984. At trial, Dr. Jay testified that many bruises covered the victim's body; that large patches of the victim's hair had been pulled out; that the injuries could not have been inflicted by another child; that the victim's brain developed massive swelling and hemorrhaging resulting from a forceful blow; and that "within a reasonable medical probability," the victim's cause of death was the above-described brain injury.

■ The defendant contends that because Dr. Jay's conclusion was based upon a reasonable medical probability, rather than a standard such as reasonable medical certainty, insufficient evidence existed to show beyond a reasonable doubt that the defendant caused the victim's death. She argues that evidence establishing only the "probable" cause of death cannot support a finding of guilt beyond a reasonable doubt.

Upon the issue of admissibility of expert opinion testimony, absolute certainty is not required. *Church v. State* (1984), Ind., 471 N.E.2d 306. However, a trial court does not necessarily abuse its discretion when it requires an expert to provide "some degree of certainty" to support the expert's opinion. *Heald v. State* (1986), Ind., 492 N.E.2d 671, 679. We note, however, that the defendant did not object at trial to the State's question to Dr. Jay seeking his opinion "within a reasonable medical probability, of the cause of death." The issue on this appeal is not admissibility but rather sufficiency of evidence. Expert opinion regarding causation may be admissible and yet in conjunction with other evidence may be either sufficient or insufficient to support a verdict. In *Noblesville Casting Div. of TRW v. Prince* (1982), Ind., 438 N.E.2d 722, Justice Hunter's plurality opinion provided a thoughtful and discerning analysis of the certitude required in expert opinions:

It is readily apparent that an attempt to quantify degrees of certitude in terms such as those employed by witnesses does, to some extent, inject semantics into the matter of expert opinion testimony. The various phrases and words do not, in and of themselves, connote exact degrees of certainty or conclusiveness; usage of any particular term by an expert witness, as a consequence, may turn on the manner in which a question is propounded or the witness's subjective assessment of the meaning of the phrase or word used to express the opinion. *See, e.g., State v. Austin,* (1976) 52 Ohio App.2d 59, 368 N.E.2d 59 (expert testified that he regarded "reasonable medical certainty" as up in the "ninety-nine point nine nine percentage range").

At the same time, to hinge the question whether an expert's opinion is admissible and probative on the willingness and ability to say that such-and-such is "reasonably certain," as opposed to "probable" or "possible," is to impose on the expert a question which elevates the law's demand for certainty in language

**2.** We need not address defendant's additional argument in this issue that the consecutive sentences for murder and neglect of dependent constitute cruel and unusual punishment, because of the reversal of the conviction for neglect.

over the state of the particular art and the value of the advances made therein. Medicine, for instance, is not yet an exact science; to demand reasonable certainty in medical opinions places a sometimes insurmountable barrier in the face of the candid and straightforward medical expert.

*Id.* at 727.

Once the foundational requirements have been satisfied and the opinion elicited, the expert witness is subject to the hallmark of our adversarial system—cross-examination. The strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact.

Thereafter, as is virtually the unanimous rule in this nation's jurisdictions, the jury is free either to accept or reject the opinion of the expert witness; the finder of fact may supplant its own conclusion for that of the expert. *White v. Crow*, (1964) 245 Ind. 276, 198 N.E.2d 222; *City of South Bend v. Users of Sewage Disposal*, (1980) Ind.App., 402 N.E.2d 1267. The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast. *State v. Vaughan*, (1962) 243 Ind. 221, 184 N.E.2d 143; *Kranda v. Houser–Norborg Medical Corp.*, (1981) Ind.App., 419 N.E.2d 1024.

*Id.* at 729.

[N]o threshold level of certainty or conclusiveness is required in an expert's opinion as a prerequisite to its admissibility. Assuming the subject matter is one which is appropriate for expert testimony and that a proper foundation has been laid, the expert's opinion or conclusion that, in the context of the facts before the witness, a particular proposition is "possible," "could have been," "probable," or "reasonably certain" all serve to assist the finder of fact in intelligently

resolving the material factual questions. The degree of certainty in which an opinion or conclusion is expressed concerns the weight to be accorded the testimony, which is a matter for the jury to resolve.

Notwithstanding the probative value and admissibility of an expert's opinion which falls short of "reasonable scientific or medical certainty," we also reiterate that standing alone, an opinion which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. . . .

Of course, an expert's opinion that something is "possible" or "could have been" may be sufficient to sustain a verdict or award when it has been rendered in conjunction with other evidence concerning the material factual question to be proved.

*Id.* at 731. We approve and embrace Justice Hunter's analysis in *Prince.*

In addition to Dr. Jay's testimony, we also note the testimony of the treating pediatrician, Glen Cartwright, M.D., as probative evidence on the issue of causation:

Q. Can you characterize for us the amount of force that would have been required to cause the head injuries that you observed?

A. That's always hard to know cause, you know, it's just difficult. The type injury for this child would have to be a fairly severe blow or multiple blows in order to have a child become unresponsive and have respiratory cardiac arrest from subdural, it would take a rather substantial injury.

Q. I believe we interviewed you before ·trial, you said that it might be the sort of blow that you might expect to see if the child were dropped out of a second story or higher ... [Objection colloquy omitted] dropped out of a second story window onto his head, is that correct and if so, would you explain what you meant by that?

A. Well, this is the type injury is a very severe injury, in that it's not one

that will be, that would not happen from a minimal fall. It is not, as far as I'm concerned, possible for the, this is a substantial injury to be caused by a trivial fall, it had to be a significant injury to this child.

Q. Was this a rather severe example, considering all the injuries that this child had?

A. I think it is very severe, I mean, the child died, you can't be much more severe.

Record 336–337. The jury could have reasonably inferred that Dr. Cartwright attributed the victim's death to the head injury.

Dr. Jay's opinion regarding the injuries as the probable cause of death, in combination with Dr. Cartwright's testimony and with the victim's numerous and severe injuries as shown and explained to the jury, compel us to conclude that a reasonable trier of fact could find the element of causation of death proven beyond a reasonable doubt.

### Conclusion

The defendant's convictions of and sentences for murder and criminal confinement are affirmed; and the convictions for reckless homicide, battery causing serious bodily injury, and neglect of a dependent causing serious bodily injury are reversed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

GIVAN, J., concurs in result without separate opinion.