# FOR PUBLICATION



FILED
Jan 15 2015, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID PAUL BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1405-CR-194 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1210-FD-1063

**January 15, 2015**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

David Paul Brown appeals his conviction for Class D felony theft. He contends that his trial counsel was ineffective for failing to object to a portion of his videotaped interview with a detective as hearsay and for not tendering a jury instruction on criminal conversion as a lesser-included offense of theft. Although defense counsel should have requested an admonishment regarding the portion of the interview containing the detective's statements, we find no prejudice in light of the other evidence presented at trial. In addition, we find that defense counsel was not ineffective for not tendering a jury instruction on criminal conversion as a lesser-included offense of theft because counsel employed a reasonable all-or-nothing trial strategy. We therefore affirm the trial court.

**Facts and Procedural History**

The facts most favorable to the verdict are as follows. Chad Miller and his wife owned a home and approximately five acres of land in Brownsburg, Indiana. The property included an older barn and a newer pole barn that was built in 2009. In 2012 Chad placed an advertisement to rent the property because he and his family were moving temporarily to Florida.

Brown answered the ad in the summer of 2012 and went to look at the property. Chad told Brown that the lease would include the home, the land, and only the older barn because he and his family were going to store the things they were not taking with them to Florida in the pole barn. Chad and Brown eventually agreed on the terms and signed a lease in late June. According to the lease, Brown and his family took possession on July 25, 2012; rent was $1500/month with a security deposit of $1500. Notably, Chad did not

2

give Brown permission or a key to access the pole barn. Chad told Brown that he had not gotten around to cleaning out the old barn, but Brown could "do what [he] want[ed] with that." Tr. p. 194.

Chad flew back from Florida on August 20, 2012, to mow the grass. When he returned, he noticed that the deadbolt to the pole barn was unlocked although it had been locked when he left for Florida. Chad owned a hand truck that he could not locate. Brown told Chad that Chad had left the hand truck outside and that Brown was going to fix it for him. But Chad was certain that he did not leave it outside. At that point, Chad became suspicious and thought that someone had been inside his pole barn. As a precaution, Chad took pictures of his belongings in the pole barn as well as the hour meter on his very expensive Kubota lawn mower. Chad returned to Florida on August 26.

Rent was due September 1, 2012. When Chad had not received rent from Brown on September 5, Chad called him. Chad again called Brown on September 10 when he still had not received rent. Both times, Brown had multiple excuses for why he had not paid rent. When October 1 came and Brown still had not paid rent, Chad returned to Indiana to start the eviction process. Chad called Brown when he arrived in Indiana. Brown suggested that Chad should forgive September's rent because Brown had done some work on the house. Chad came to look at the house but said that because the work was not authorized, Brown still had to pay September's rent.

While Chad was at the house, he went to the pole barn to check his lawn mower. He immediately noticed cigarette butts in the cup holder—Brown was a smoker—and three extra hours on the hour meter when compared to the photograph he had taken on his

3

previous trip to Indiana. Chad also noticed that some boxes were open that had been closed before and that some boxes had been moved. Chad called the Hendricks County Sheriff's Department to make a report. At that time, Chad did not notice anything missing.

When Chad returned to the property two days later, he realized that his slot machine was missing from the pole barn. Chad recalled that Brown's wife, Elizabeth, had an antique store in Broad Ripple, so he went to the store to see if his slot machine was there. Chad, pretending to be a shopper, asked Elizabeth if she had a slot machine for sale. She said yes, because her husband had come "across a . . . slot machine that some guy was trying to scrap and so [he] offered him money for it and he bought it from him." *Id.* at 175. Chad continued to feign interest, and after Elizabeth showed him the slot machine, he took a picture of it. The slot machine was damaged and missing the quarters from inside. Elizabeth offered to sell the slot machine for $50.00. *Id.* at 177. Chad then showed Elizabeth a picture of his son playing the same slot machine and said "this is my slot machine." *Id.* Elizabeth appeared shocked. Chad told her he would be evicting their family and that he wanted his slot machine back. When Chad left, he took his slot machine back to the pole barn and called the Sheriff's Department.

Deputy Teresa Woods interviewed Brown in October 2012. Brown said the slot machine was in the old barn and that he took it out in order to refurbish it and return it to Chad. *Id.* at 227, 230. Detective Aaron Payne later interviewed Brown at the Sheriff's Department. The interview was videotaped. Brown said that the slot machine was in the old barn and that he was "going to restore it [for Chad] as a gesture of goodwill." *Id.* at 245.

4

The State charged Brown with Class D felony theft for the slot machine and alleged that he was a habitual offender.[1]  At trial, the State admitted the videotaped interview of Brown and Detective Payne (Exhibit 14).  The interview was redacted to comply with the trial court's ruling on the State's motion in limine.[2]  *See* Appellant's App. p. 100.  After the State played the redacted videotape, it rested.  The jury found Brown guilty of theft.  In the second phase of trial, the jury determined that Brown was a habitual offender.  The trial court sentenced Brown to 180 days in the Indiana Department in Correction, enhanced by 915 days for the habitual-offender finding, which was to be served at the Hendricks County Work Release Center.

Brown now appeals.

### Discussion and Decision

Brown contends that his trial counsel was ineffective.  To allege a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a defendant must show that counsel's performance was deficient.  *Id.* at 687.  This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment.  *Id.*  Even the finest, most

---

[1] The State also charged Brown with Class D felony receiving stolen property regarding "a utility dump style trailer."  Appellant's App. p. 12.  But because Brown was acquitted of this count, we do not include any facts related to the trailer.

[2] The State filed a motion in limine prohibiting the defense from mentioning an alleged battery that Chad committed against Brown after he found out about the slot machine.  The trial court granted the motion in limine.  *See* Tr. p. 34-41.

experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client; therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002), *reh'g denied*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

Second, a defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

These prongs are "separate and independent inquiries," and a petitioner's "failure to establish either prong will cause the claim to fail." *State v. Greene*, 16 N.E.3d 416, 419 (Ind. 2014) (quotation omitted). In addition, because Brown alleges ineffective assistance of counsel on direct appeal, he is foreclosed from raising it on post-conviction. *See Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998), *reh'g denied*.

### I. Videotaped Interview

First, Brown argues that his trial counsel was ineffective for failing to object to a portion of his videotaped interview with Detective Payne. When the videotaped interview was played for the jury at trial, it comprised ten pages in the trial transcript; the portion that Brown now challenges consists of only one page:

DETECTIVE PAYNE: As far as the slot machine goes you can't take his property at all; he didn't give you permission to take that slot machine anywhere to do anything with.

MR. BROWN: No, he didn't.

DETECTIVE PAYNE: You just can't do that; I don't care if he had an old rusty tractor sitting out back.

MR. BROWN: (Inaudible).

DETECTIVE PAYNE: You can't take his property at all. He didn't give you permission to take that slot machine anywhere to do anything with.

MR. BROWN: No he didn't.

DETECTIVE PAYNE: You just can't do that. I don't care if [he] had an old rusty tractor sitting out back.

MR. BROWN: Well I wasn't trying to move the tractor.

DETECTIVE PAYNE: It didn't matter if you don't have permission to take that old rusty tractor or that slot machine anywhere or do anything with it. You just can't do it regardless of whether he rents the place or not; you just can't take his (inaudible).

MR. BROWN: Yeah, I mean, you know, when you put it like that, it is I, you know, when I did it I figured that me and him were on a good relationship that I could, you know, I could do that for him.

Tr. p. 300-01. Brown argues that Detective Payne's statements are inadmissible hearsay and that defense counsel should have requested a limiting instruction.[3]

---

[3] Brown also argues that Detective Payne's statements invaded the province of the jury under Indiana Evidence Rule 704(b). *See* Appellant's Br. p. 11 ("Detective Payne's recorded statements left the jury firmly convinced . . . that Brown had engaged in misconduct in taking [Chad's] property without permission."). Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Because Brown has consistently admitted taking Chad's slot machine, Detective Payne's comments did not invade the province of the jury. And contrary to Brown's arguments on appeal, in the portion that Brown challenges Detective Payne did not opine that Brown was "a liar and a thief." *See* Appellant's Reply Br. p. 3.

"'Hearsay' means a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Indiana Evidence Rule 801(d)(2)(A) provides that statements made by a party opponent are not hearsay. Accordingly, Brown's statements are admissible as those of a party-opponent. As for Detective Payne's statements, which put Brown's statements in context, they would have been admissible if defense counsel would have simply requested a limiting instruction for the jury. *See Strong v. State*, 538 N.E.2d 924, 928 (Ind. 1989) (holding that the "statements by the police officer were not inadmissible hearsay because they were not offered as proof of the facts asserted therein," and the "limited function of the police questions was explained to the jury at the time the recording was played with [an] admonishment from the trial judge at the request of defense counsel").[4]

In those cases where an admonishment was not given to the jury, our Supreme Court has held that even though the jury should have been advised that the police officer's statements were not evidence, the admission of the police officer's statements can be harmless in light of the other evidence presented at trial. *See Lampkins v. State*, 778 N.E.2d

---

[4] The admonishment in *Strong* provided:

> On the tape there are some statements made by Mr. Loy and by Detective Rhodes, the other police officer, and I want to instruct you that what the police officers say in the course of the interview, the police officers [sic] information, whatever they say is not evidence and is not to be considered by you as evidence. But is to be considered only as questioning and questions in order to elicit information to draw out information from Mrs. Strong. There are certain things that the police officers say and representations that they make that may or may not be true. They are not to be considered as evidence other than to bring out information from Mrs. Strong. Okay.

538 N.E.2d at 928.

8

1248, 1251-52 (Ind. 2002) (finding error harmless because in a second interview, the defendant confessed to shooting the victim twice in the back and testified as such at trial); *see also Wilkes v. State*, 917 N.E.2d 675, 686 (Ind. 2009), *reh'g denied*. Accordingly, even assuming that defense counsel was deficient for failing to request an admonishment, Brown has failed to show that defense counsel's deficient performance prejudiced him because we find the error harmless in light of the other evidence presented at trial. Specifically, a different officer, Deputy Woods, interviewed Brown in October 2012, and Brown told her that the slot machine was in the old barn and that he took it out in order to refurbish it and return it to Chad. But Chad testified at trial that the slot machine was in the locked pole barn and that he did not give Brown permission to enter the pole barn, let alone to take his slot machine out of the barn. In addition, Chad testified that he found the slot machine in Brown's wife's antique store and she offered to sell it to him for $50.00. Thus, Brown has failed to prove that his trial counsel was ineffective for failing to object to the limited portion of his videotaped interview with Detective Payne and request an admonishment.

## II. Jury Instruction

Next, Brown argues that his trial counsel was ineffective for not tendering a jury instruction on Class A misdemeanor criminal conversion as a lesser-included offense of Class D felony theft. A person who knowingly or intentionally exerts unauthorized control over property of another person commits Class A misdemeanor criminal conversion. Ind. Code Ann. § 35-43-4-3 (West 2012). Class D felony theft includes the additional element that the person have the intent to deprive the other person of any part of the property's value or use. Ind. Code Ann. § 35-43-4-2(a) (West 2012). Courts have consistently held

9

that criminal conversion is an inherently lesser-included offense of theft because it can be established by proof of less than all of the material elements of theft. *Lane v. State*, 953 N.E.2d 625, 630 n.4 (Ind. Ct. App. 2011).

Our Supreme Court has held that a tactical decision not to tender a lesser-included offense does not constitute ineffective assistance of counsel, even where the lesser-included offense is inherently included in the greater offense and where that choice proves detrimental to the defendant. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). "It is not sound policy for this Court to second-guess an attorney through the distortions of hindsight." *Id.* (quotation omitted).

Here, defense counsel employed an all-or-nothing strategy, asking the jury during closing argument to find that the evidence did not support a finding beyond a reasonable doubt that Brown intended to deprive Chad of the value or use of any part of the slot machine because he had intended to return it. Tr. p. 471. Without the instruction on criminal conversion, the jury was not given an alternative other than to convict as charged on theft (which required the additional element) *or* to acquit. If defense counsel had requested an instruction on criminal conversion, Brown would have been entitled to the instruction.[5] This would have all but guaranteed a conviction. But defense counsel chose a strategy that, if it had been successful, would have left Brown with no criminal conviction. Given the facts of this case, the strategy, although risky, was not unreasonable. Brown has therefore failed to establish that defense counsel's representation fell below an

---

[5] Brown concedes on appeal that the evidence established criminal conversion. *See* Appellant's Br. p. 14 ("The uncontradicted evidence established all of the essential elements of conversion." & "Brown's actions constituted either theft or conversion—one or the other.").

objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment.[6] We therefore do not address the prejudice prong.

Affirmed.

BAKER, J., and RILEY, J., concur.

---

[6] In a footnote, Brown alleges numerous additional instances of ineffective assistance of counsel. *See* Appellant's Br. p. 12 n.7. Brown, however, does not make a separate analysis using the two *Strickland* prongs. These issues are therefore waived. Waiver notwithstanding, we find no ineffective assistance of counsel on these additional grounds.