## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Aug 31 2020, 10:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Kelly Starling
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerrick L. Whitley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2833<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Barbara Crawford, Judge<br><br>Trial Court Cause No.<br>49G01-1806-MR-20203 |

**Mathias, Judge.**

[1] Following a jury trial in the Marion Superior Court, Jerrick Whitley was
convicted of two counts of murder, Level 3 felony aggravated battery, and

possession of a firearm. Whitley was sentenced to fifty-five years for each murder conviction and nine years for aggravated battery, for an aggregate term of 119 years in the Department of Correction. On appeal, Whitley argues that:

I. The trial court abused its discretion in admitting into evidence two statements made during Whitley's interrogation by police; and,

II. The evidence is insufficient to support one of Whitley's convictions for murder.

[2] We affirm.

## Facts and Procedural History

[3] Whitley's convictions arise from a brawl between patrons of the Sawmill Saloon that ended in gunfire. The bar is located at the intersection of Sherman Avenue and 14th Street in Indianapolis. In the early hours of January 28, 2018, the bar was "basically full." Tr. Vol. II, p. 232. Among the crowd were Whitley and his cousin Marion Glenn ("Marion"), and siblings Deron and Marshe Gray ("Deron" and "Marshe") with their friend Asia Murray ("Asia"). The two groups were seated at nearby tables when, shortly after 2:00 a.m., a fight broke out between Marion and Deron. Witnesses and security camera footage indicated that Marion was the instigator.

[4] Quickly, other patrons joined the fight, and the scene devolved into "[a] bunch of chaos." Tr. Vol. II, p. 217. The crowd around the fight moved from the main bar area to a gated outdoor patio, then to the parking lot and the street. A witness later said it was as if "the whole bar came outside." Tr. Vol. II, p. 231.

Sawmill Saloon security guard Christopher Anthony ("Anthony") and former security guard James Ratcliffe ("Ratcliffe") intervened to try to stop the fighting.

[5] In the moments before the shooting occurred, Marion and Deron were tussling on the ground in the parking lot. Anthony and Asia were also on the ground, trying to pull the men off one another. Whitley then emerged from around the corner of the bar and fired into the group of people on the ground. Anthony drew his gun and returned fire in Whitley's direction.

[6] From her position near the fight, Asia saw much of the exchange of gunfire. She saw Whitley round the corner of the bar and shoot "a whole lot of shots." Tr. Vol. II, p. 220. She saw the security guard, Anthony, draw his gun and return fire "once or twice," striking Whitley in the upper leg area. Tr. Vol. II, p. 221. Then she saw Whitley limp away behind a house across the street.

[7] Michael Brandenburg ("Brandenburg") lived in the house directly across the street from the Sawmill Saloon and saw the commotion in the wake of the shooting. At the sound of shots fired, Brandenburg looked out his front window and saw three people lying on the ground and one man running through his yard. Brandenburg saw the running man get shot, briefly stumble, and drop the gun he was holding. Then he saw the man get up, grab his gun, and fire the weapon. The man staggered up Brandenburg's driveway, jumped over the chain-link fence into his backyard, and disappeared from view. After emergency

personnel arrived, Brandenburg saw a man on a stretcher being wheeled to an ambulance in the nearby alley.

[8] The bar patrons who had gathered to watch the fight scattered when the shooting began, ducking and running away. Asia ran and hid behind a parked car. Marshe was swept back into the bar with a crowd of others. When she heard that someone had been shot and killed, Marshe went back outside and discovered Asia hovering over Deron's body. Deron had been shot three times. The women stayed with him until emergency personnel arrived. Deron was pronounced dead at the scene.

[9] The security guard, Anthony, was shot seven times. He lost consciousness and was driven to a hospital by a bystander before emergency personnel arrived. The weapon he fired was never recovered. Ratcliffe, the former security guard, was shot once. Responding Officer Aaron Helton recovered a holstered gun that he found tucked into Ratcliffe's pants. EMTs transported Ratcliffe from the scene to a hospital, where he died from his injuries.

[10] Whitley suffered one gunshot wound to his groin. Responding officers found him, unarmed, in an alley by Brandenburg's house and transported him to a hospital. Officers recovered a .40 caliber Zastava under a rake in Brandenburg's backyard. In addition, four other weapons were found in and around the Sawmill Saloon that night. A 9-millimeter Smith & Wesson was found in Deron's vehicle, parked outside the bar. A Phoenix Arms .25 caliber was found in the driveway behind the bar. The holstered gun recovered from Ratcliffe was

a Hi Point .380. And a Taurus .357 was found in a jacket inside the bar. All of the cartridge shell casings recovered from the scene were from the Zastava. The bullets and bullet fragments recovered from Anthony, Deron, and Ratcliffe were all fired from the Zastava. The bullet that hit Whitley was not recovered.

[11] Fingerprints collected from the scene and DNA collected from the Zastava were unidentifiable. Deron's DNA was recovered from a shirt discovered on the scene that Whitley had worn. Whitley's blood was found on the fence to Brandenburg's backyard. DNA recovered from the Phoenix Arms gun found in the bar's driveway belonged to an unknown individual.

[12] Responding officers interviewed Brandenburg, who at first gave the police a false ID because there was an active warrant out for his arrest in an unrelated criminal case. Brandenburg relayed what he saw that night but later became uncooperative in the investigation, requiring the trial court to order the issuance of a body attachment warrant before he appeared to testify at trial. Brandenburg was unable to identify the man he had seen in his front yard beyond describing him as a Black man wearing a red hoodie.

[13] On February 15, 2018, Anthony, still hospitalized, was interviewed by officers with the Indianapolis Metropolitan Police Department ("IMPD"). He identified Whitley as the man who shot him but denied having a gun himself because he was legally prohibited from possessing a gun. Anthony later admitted to shooting Whitley after entering a Use Immunity Agreement with the Marion County Prosecutor's Office. The agreement provided that, in

exchange for his testimony, Anthony would not be prosecuted for his possession or use of a firearm on the night in question.

[14] The State filed charges against Whitley on June 22, 2018, as follows: Count I, murder; Count II, murder; Count III, Level 3 felony aggravated battery; and Count IV, Level 4 felony unlawful possession of a firearm by a serious violent felon.

[15] Whitley was arrested on July 14, 2018. He was interviewed that day by IMPD Detective Brian Schemenaur ("Detective Schemenaur") and gave a videotaped statement after reading the probable cause affidavit. Before his arrest, Whitley had seen television coverage of the shooting. In the interview, Whitley admitted to being shot on January 28 at the Sawmill Saloon and demanded to know who shot him. Whitley recounted several versions of what happened the night of the shooting and also said that everything he had told Detective Schemenaur during the interview was a lie.

[16] A bifurcated jury trial was held on October 7 through October 9, 2019. During the first stage of the trial, Count IV, Level 4 felony unlawful possession of a firearm by a serious violent felon, was submitted to the jury as possession of a firearm. A redacted version of Whitley's videotaped statement was played for the jury. Whitley objected to two portions of the statement and argued that they should be redacted. The first was a statement by Detective Schemenaur in which the detective said, "I believe you had a gun and you shot people." Ex. Vol., State's Exhibit 163, 1:25:15; Tr. Vol. III, pp. 141, 144–146. The trial court

admitted the statement over Whitley's objection. The second was a statement by Whitley himself, in which he said, "They say I went up the dude's driveway, I didn't go up no [expletive] driveway." Ex. Vol, State's Exhibit 163, 1:08:55; Tr. Vol. III, p. 143. This statement was also admitted over Whitley's objection.

[17] The jury found Whitley guilty on all four counts. The State declined to seek an enhancement of the firearm possession count at a second stage of trial and asked that it be dismissed. A sentencing hearing was held on October 31, 2019. Whitley was sentenced to an aggregate 119-year term of imprisonment: fifty-five years for each count of murder and nine years for Level 3 felony aggravated battery, all to be served consecutively. This appeal followed. Additional facts will be provided as necessary.

## Discussion and Decision

[18] Whitley presents two issues for our review. He asserts that the trial court abused its discretion in its admission of evidence, namely, that statements made during his videotaped interview with Detective Schemenaur constituted inadmissible hearsay. And, he argues that the State presented insufficient evidence to prove that Whitley was responsible for the murder of James Ratcliffe. We address each issue in turn.

### I. Abuse of Discretion

[19] We review challenges to a trial court's evidentiary rulings for abuse of discretion because the trial court has inherent "discretionary power on the admission of evidence." *Lewis v. State*, 34 N.E.3d 240, 247 (Ind. 2015). Reversal

of a trial court's decision to admit evidence is warranted where it amounts to an abuse of discretion. *Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). Abuse of discretion occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Ballard v. State*, 877 N.E.2d 860, 861–62 (Ind. Ct. App. 2007). Whitley claims that the trial court abused its discretion in the admission of evidence on two occasions.

[20] First, Whitley argues that the trial court abused its discretion in admitting a statement made by Detective Schemenaur during Whitley's videotaped interview. Specifically, when Whitley asked, "[d]o you know if I told you some untrue stuff? Which part?" Detective Schemenaur responded, "I believe you had a gun and you shot people." Ex. Vol., State's Ex. 163 at 1:25:13. Whitley asserts that the admission of this statement violated Ind. Evidence Rule 704(b). The rule provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Witnesses are restricted to "observable fact, leaving any appropriate conclusions as to intent, belief, or feelings to the trier of fact." *Weaver v. State*, 643 N.E.2d 342, 345 (Ind. 1994).

[21] Whitley contends that the detective's statement about his belief regarding Whitley's involvement in the Sawmill Saloon shooting was an "inappropriate[] assert[ion] . . . of Whitley's guilt." Appellant's Br. at 13. Thus, Whitley argues, its admission into evidence was an impermissible invasion of the factfinding role of the jury and violated Evidence Rule 704(b). We disagree.

[22] Hearsay is "a statement that is not made by the declarant while testifying at the trial or hearing and is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). "A statement is not hearsay if it is not used to prove the truth of the matter asserted." Smith v. State, 721 N.E.2d 213, 216 (Ind. 1999). On the matter of police questions and comments in interviews, our supreme court has noted that such statements "may be designed to elicit responses from the defendant and if so, are 'not offered as proof of the facts asserted therein.'" Id. (quoting Strong v. State, 538 N.E.2d 924, 928 (Ind. 1989)). Accordingly, such prompting statements are not hearsay. See Lehman v. State, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010) (holding that an officer's questions were designed to prompt the defendant to speak and thus not hearsay and not introduced to prove the truth of the matter asserted), trans. denied; see also Williams v. State, 669 N.E.2d 956, 958 (Ind. 1996) (reasoning that a defendant's responses to prompting statements constitute the real "evidentiary weight of the conversation").

[23] Whitley struck an evasive tone in his interview with Detective Schemenaur, repeatedly challenging the detective to divulge more of what he knew about Whitley's involvement in the shooting, while avoiding saying what he had done. It was in response to one of Whitley's numerous requests for information that Detective Schemenaur replied with what he thought Whitley had done, in an effort to prompt Whitley to abandon his obfuscations and tell the detective what happened that night.

[24]   This dynamic is analogous to an exchange that our supreme court held was properly admitted into evidence in *Strong*, 538 N.E.2d at 928. In that case, a detective asserted in an interview that he thought the defendant's story did not match the evidence the detective had. The statement was admitted into evidence over the defendant's hearsay objection. The court agreed that the statement was not hearsay because it was not offered as proof of the facts that the detective asserted. Rather, the court found that the detective's statement was meant to prompt the defendant into being truthful. Here, Detective Schemenaur similarly asserted that he thought Whitley was involved in the shooting to a greater extent than what Whitley had so far described, in an effort to prompt Whitley to be truthful. And in fact, a short time later in the interview, Whitley admitted that he "found" a gun and shot it that night at the Sawmill Saloon. Ex. Vol., State's Exhibit 163 at 1:32:25–1:34:30. And whereas in *Strong,* the trial court granted the defendant's request to give a limiting instruction to the jury regarding the detective's statement, Whitley made no such request and the trial court had no affirmative duty to admonish the jury. *Smith*, 721 N.E.2d at 216.

[25]   We agree with the State that Detective Schemenaur's statement was meant to elicit a response from Whitley and to "see if he would change his story again." Appellee's Br. at 12. The statement was shown to the jury to reveal how Whitley's story changed as he gleaned information from the detective about the status of the IMPD's investigation into the shooting. The statement was a prompting statement by an officer that was not offered at trial as proof of the

facts asserted therein. Accordingly, the trial court did not abuse its discretion in admitting the statement into evidence over Whitley's objection.

[26] Second, Whitley argues that the trial court abused its discretion in admitting a statement he made during the interview because it was inadmissible hearsay. During his interview, Whitley refuted a detail that he had read in the probable cause affidavit. The affidavit included, in relevant part, Brandenburg's statements to police on the night of the shooting, including that he saw a man "cut up a driveway, jump[] two fences, and [fall] in an alley[.]" Appellant's Conf. App. p. 20. In the interview, Whitley stated "they say I went up the dude's driveway, I didn't go up no [expletive] driveway." Ex. Vol., State's Ex. 163 at 1:08:55. At trial, Whitley objected to the admission of the statement as hearsay. The State contended that it went to Whitley's state of mind and was not offered to prove the truth of the matter asserted. The trial court admitted the statement over Whitley's objection.

[27] Whitley contends that the trial court erred in admitting the statement because it repeated Brandenburg's out-of-court assertion of fact. We agree with the State that Whitley's statement that "they say I went up the dude's driveway" was not offered to prove the truth of the matter. Rather, it was offered to show Whitley's reaction—that is to say, his state of mind during the interview—to the contents of the probable cause affidavit. As discussed previously, this was part of Detective Schemenaur's effort to prompt Whitley into telling him what happened, as opposed to allowing Whitley to continue demanding that the detective tell him what others said had happened.

[28]     Whitley's challenge to the admission of his statement is further weakened because the second half of his statement, "I didn't go up no [expletive] driveway," is not hearsay, even if it had been offered to prove the truth of the matter. It is a statement about Whitley's own actions and does not involve a comment on out-of-court statements made by any other person.

[29]     In short, the trial court's admission of Whitley's statement did not constitute an abuse of discretion because it was not offered to prove the truth of the matter asserted therein, and because at least part of the statement was not hearsay at all.

## II.   Sufficiency of Evidence

[30]     Whitley also argues that the evidence was insufficient to prove beyond a reasonable doubt that he murdered Ratcliffe, the former security guard who was shot while trying to break up the fight. Our review of a challenge to the sufficiency of evidence to support a criminal conviction respects the factfinder's exclusive province to weigh conflicting evidence. *Miller v. State*, 106 N.E.3d 1067, 1073 (Ind. Ct. App. 2018), *trans. denied*. Accordingly, we neither reweigh the evidence nor judge the credibility of witnesses but consider only the probative evidence in support of the judgment and reasonable inferences drawn therefrom. *Id.* It is not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995). We will affirm the conviction unless no reasonable factfinder could find the elements of the offense proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

[31] Murder is the knowing or intentional killing of another human being. Ind. Code § 35-42-1-1(1). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Whitley contends that his conviction for the murder of Ratcliffe cannot be sustained because "no one saw [him] shoot Ratcliffe," whereas the State presented eyewitness testimony that Whitley fired the shots that struck Anthony and Deron. Appellant's Br. p. 16.

[32] Evidence of Whitley's participation in the gunfight is plentiful: Asia and Anthony identified Whitley as the man who emerged from behind a corner of the bar and shot at the group of people fighting on the ground; Anthony described returning fire in Whitley's direction and striking him; and Whitley sustained a gunshot wound to his upper leg. Asia corroborated that the security guard fired in Whitley's direction and struck him in the upper leg. Asia and Brandenburg testified that they saw a man, who Asia identified as Whitley, get shot in the upper leg; Brandenburg described the man running through his front yard, being shot, briefly dropping his gun, and then recovering enough to retrieve the gun, return fire, and attempt to escape. Whitley's blood was found on the fence to Brandenburg's backyard, and a discarded gun was discovered in his backyard. Whitley was attended to by EMTs in an alley near Brandenburg's home. Asia, Anthony, and Brandenburg described the shooter as wearing a red shirt; Whitley was discovered wearing a red shirt, and Anthony was not. Finally, in his interview with Detective Schemenaur, Whitley admitted to

getting a gun and shooting at people. Thus, the State presented incontrovertible evidence that Whitley fired and was fired upon outside the Sawmill Saloon.

[33]     Whitley's contention, then, that evidence of there being multiple shooters undermines the conclusion that he was the shooter responsible for Ratcliffe's murder is to no avail. The State presented evidence that two men wielded and fired weapons on January 28, 2018: Whitley and Anthony, the security guard who admitted to firing a gun that night despite being legally prohibited from possessing a weapon. Anthony testified that Ratcliffe, a former security guard, assisted him in trying to break up the fight between Marion and Deron in the parking lot. When he was shot, Ratcliffe fell and was later recovered in the street near to where Deron's dead body lay. It is reasonable to infer based on Anthony's testimony and based on where the men fell that Anthony, Deron, and Ratcliffe were all near one another when they were shot. Their proximity supports the inference that they were all struck by bullets fired from the same shooter, Whitley. Furthermore, bullets and bullet fragments recovered from Anthony, Deron, and Ratcliffe indicated that all of the bullets were fired from the same gun. And those bullets were determined to have been fired from the weapon recovered in Brandenburg's backyard. Additionally, Anthony testified and Asia corroborated that he fired only once or twice in Whitley's direction. While Anthony's and Ratcliffe's proximity to one another could give rise to the hypothesis that one of Anthony's shots hit Ratcliffe, that proposition is undermined by the bullet fragment evidence and by the sheer volume of shots

intentionally fired into the crowd by Whitley as compared to the few intentionally fired at Whitley by Anthony.

[34] The State presented evidence well beyond Whitley's "[m]ere presence at the crime scene with the opportunity to commit a crime," and thus the evidence is sufficient to sustain his conviction. *See Brink v. State*, 837 N.E.2d 192, 194 (Ind. Ct. App. 2005), *trans. denied*. Because we decline to reweigh evidence or judge witness credibility when reviewing a challenge to the sufficiency of evidence, we will not disturb the jury's conclusion based on the evidence presented here that Whitley was responsible for Ratcliffe's murder.

## Conclusion

[35] We hold that the trial court's admission into evidence of statements made by Detective Schemenaur and Whitley during the police interview did not constitute an abuse of discretion. And, Whitley has not persuaded us that the evidence presented was insufficient to support his conviction for the murder of James Ratcliffe. For these reasons, we affirm the trial court's judgment.

[36] Affirmed.

Bradford, C.J., and Najam, J., concur.